UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MIA BEHURST, as personal representative
of the estate of TARA LYNNE HALL,
deceased,

       Plaintiff,                         Civil No. 04-1261-HA

       v.                             OPINION AND ORDER

CROWN CORK & SEAL USA, INC., a
Delaware corporation, also known as CROWN
CORK AND SEAL COMPANY, INC., and
AMECO CORPORATION, a Wisconsin
corporation,

       Defendants.

Page 1    OPINION AND ORDER

HAGGERTY, Chief Judge:

This case is brought by plaintiff Mia Behurst, mother to and personal representative of

the Estate of Tara Lynne Hall, deceased (hereinafter referred to as decedent).  On August 12,

2002, decedent was killed while working as an employee at the can-making plant operated in

North Portland by defendant Crown Cork and Seal USA, Inc. (hereinafter referred to as

defendant Crown).  Additional facts regarding this tragedy will be reviewed as necessary in the

course of analyzing the legal issues presented by the parties' motions and arguments.

## PENDING MOTIONS

There are three primary areas of dispute raised in the motions before the court.  First,

defendant Crown moves to strike exhibits presented by plaintiff pertaining to:

> (1)    findings made by the Occupational Health and Safety (OSHA) Division of the
> State of Oregon (Pl.'s Exhibits 21, 53, 55, 56, 59, hereinafter referred to as the
> OSHA Materials), and

> (2)    the declarations plaintiff has presented from former and current employees of
> defendant Crown (specifically, there are three distinct motions: a Motion to Strike
> the Declaration of Fred George Groth, a Motion to Strike the Declaration of
> James William Mount, and a Motion to Strike the Declaration of Robert Hyke,
> hereinafter referred to as the employee declarations).

Second, defendant Crown seeks summary judgment against plaintiff's First Claim

alleging Wrongful Death.

Third, co-defendants Ameco Corporation and Ameco Company LLC (hereinafter referred

to as defendant Ameco) seek summary judgment as to plaintiff's remaining two claims, the

Second Claim for Wrongful Death and the Third Claim for Strict Product Liability.

This court deems oral argument on these motions unnecessary.  For the following

reasons, defendant Crown's Motions to Strike [76, 78, 80, 85] are denied; defendant Crown's

Motion for Summary Judgment [49] is denied; and defendant Ameco's Motion for Summary Judgment [29] is granted.

**STANDARDS**

**1.     Motions to Strike**

Motions to strike are regarded with disfavor. *Montecino v. Spherion Corp.*, 427 F. Supp.2d 965, 966-67 (C.D. Cal. 2006) (citation omitted). Matters should not be stricken from a pleading unless it is clear that those matters can have no possible bearing upon the subject matter of the litigation. *Id*. at 967 (citation omitted). When considering a motion to strike, the court "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Securities Litig.*, 114 F. Supp. 955, 965 (C.D. Cal. 2000). Moreover, a court must deny a motion to strike if any doubt exists whether the allegations in the pleadings might be relevant in the action. *Id*.

Federal Rule of Civil Procedure 56(e) requires that affidavits submitted in support of a motion for summary judgment must: (1) be made on the personal knowledge of an affiant who is competent to testify to the matters stated therein, (2) must state facts that would be admissible in evidence, and (3) if the affidavit refers to any document or item, a sworn or certified copy of that document or item must be attached to the affidavit. Fed. R. Civ. P. 56(e). *Boyd v. City of Oakland*, 458 F. Supp.2d 1015, 1023 (N.D. Cal. 2006) (citations omitted). This rule applies equally to declarations as well. *Id*. (citing 28 U.S.C. § 1746; declarations that are made under penalty of perjury have the same effect as an affidavit).

Federal Rules of Evidence also apply to these issues, and require that witnesses have personal knowledge: "A witness may not testify to a matter unless evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence

to prove personal knowledge may, but need not, consist of the witness' own testimony."  F.R.E.

602; *see also Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations on

information and belief are entitled to no weight where declarant lacks personal knowledge).  A

declarant must show personal knowledge and competency "affirmatively" under Federal Rule of

Civil Procedure 56(e), which can be done by "the nature of the declarant's position and nature of

participation in matter." *Id*.

**2.     Summary Judgment**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show there is

no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*,

929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof and meets this burden by identifying

portions of the record on file that demonstrate the absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the initial burden is satisfied, the

burden shifts to the non-moving party to demonstrate through the production of probative

evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party.

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).

All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the

moving party.  *MetroPCS, Inc. v. City and Co. of San Francisco*, 400 F.3d 715, 720 (9th Cir.

2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment

is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## ANALYSIS

**1.    Motions to Strike**

### i.    OSHA Materials

Defendant Crown contends that plaintiff's OSHA Materials should be stricken as irrelevant because they fail to provide evidence of a deliberate intent to injure decedent, and because plaintiff cannot make the required showing of trustworthiness necessary to establish admissibility. This court disagrees.

Construing the evidence favorably to plaintiff, it is plain that OSHA investigated and issued findings that pertain directly to the circumstances at the plant where decedent was killed, communications between employees and management at the plant regarding the machine at issue, the dangers it posed, prior accidents involving the machine, attempted remedial efforts and, essentially, who knew what about the machine and its risks and the opportunities to improve its safety. The scope of the question as to whether defendant Crown is entitled to summary

judgment differs from whether the OSHA Materials should be considered irrelevant to that scope and therefore stricken.  Motions to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Neveu v. City of Fresno*, 392 F. Supp.2d 1159, 1170 (E.D. Cal. 2005).  There is a significant possibility that the OSHA Materials could offer relevant information as to the issues raised by this litigation.

Defendant Crown's challenge regarding the OSHA Materials' status as business records also fails.  Under Federal Rule of Evidence 803(8), the following evidence is not excluded under a hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The court has examined the OSHA Materials and concludes that the documents concern "activities" of OSHA, "matters observed pursuant to" OSHA's duties, and consist of factual findings "resulting from an investigation made pursuant to authority granted by law" in the absence of any circumstances that would indicate a lack of trustworthiness.

To the extent that defendant Crown complains that OSHA's investigatory reports at issue state opinions or conclusions, such objections are overruled.  Opinions and conclusions are admissible under Federal Rule of Evidence 803(8) if they are based on a factual investigation.  *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988).  The findings, opinions and conclusions at issue here plainly arose after the completion of an extensive factual investigation.

The criticisms of the OSHA Materials leveled by defendant Crown's Plant Manager simply fail to create circumstances that indicate that the Materials should not be construed as trustworthy.  *See* Declaration of David Sellhausen re Crown Cork & Seal's Motion for Summary Judgment, Para. 9.  Sellhausen's views challenge the possible weight that factfinders may wish to give the OSHA Materials, but do not support striking those materials from the case.  Nor do any other arguments asserted in support of the motion to strike this evidence.

### ii.    Employee Declarations

Defendant Crown argues that the employee declarations should be stricken because, in part, this evidence fails to establish that representatives of defendant Crown harbored the specific intent to deliberately injure decedent or someone in her position.  The standards applicable to resolving the pending motions for summary judgment are addressed below.  For purposes of evaluating defendant Crown's Motions to Strike the Employee Declarations, this court concludes that each of the challenged declarations provides valid, probative statements of personal knowledge of facts and circumstances that are relevant to the legal issues before the court.

Defendant Crown's complaints that the declarations are improperly conclusory, speculative, based upon inferences drawn from non-party opponents, or contain inadmissible hearsay, are rejected.  Defendant Crown raises a variety of specific challenges as to the appropriate weight that should be given to aspects of the declarations that need not be addressed individually.  To the extent that defendant Crown may assert a technical objection to the form or wording of some of the evidence at issue, those objections have been taken into account in the analysis of the summary judgment motion.  Leave to revisit the admissibility of such evidence will be granted before trial.

2.       **Summary Judgment Motions**

    i.       **Defendant Crown's Motion**

There is no dispute that Oregon's Workers Compensation Law imposes liability, without

fault, upon employers for "compensable injuries" to its workers.  O.R.S. 656.017.  There is also

no dispute that this is the exclusive remedy for any injuries that arise "out of and in the course of

employment that are sustained by subject workers."  O.R.S. 656.018(1)(a).

In return for this form of no-fault liability, employers are generally immune from other

remedies that employees may have for such injuries.  O.R.S. 656.018(2).

However, an exception to the exclusivity provision exists for certain intentional acts by

the employer:

> If injury or death results to a worker from the deliberate intention of the employer
> of the worker to produce such injury or death, the worker, the widow, widower,
> child or dependent of the worker may take under this chapter, and also have cause
> for action against the employer, as if such statutes had not been passed, for
> damages over the amount payable under those statutes.

O.R.S. 656.156(2).

The leading case on this exception is *Kilminster v. Day Mgmt. Corp.*, 919 P.2d 474 (Or.

1996).  The Oregon Supreme Court held that a worker hoping to show that an injury occurring

during the course and scope of the worker's employment resulted from the deliberate intention of

the employer to produce that injury must show that "the employer determined to injure an

employee; that is, had a specific intent to injure an employee; that the employer acted on that

intent; and that the worker was, in fact, injured as result of the employer's actions."  919 P.2d at

481; *see also Lusk v. Monaco Motor Homes, Inc.*, 775 P.2d 891, 894 (Or. App. 1989) (under this

exception, "deliberate intent to injure" means that the employer had an opportunity to weigh consequences and made a conscious choice among possible courses of action).

Evidence of an employer's gross negligence, carelessness, recklessness or conscious indifference falls short of the intent-to-injure standard of ORS 656.156(2).  *See Rangel v. Denton Plastics, Inc.*, 939 P.2d 644 (Or. App. 1997).  Rather, for this exception to apply, "there must be a specific intent, and not merely carelessness or negligence, however gross."  *Bakker v. Baza'r, Inc.*, 551 P.2d 1269, 1274 (Or. 1976) (internal quotations omitted); *see also Olsen v. Deschutes Co.*, 127 P.3d 655, 677-78 (Or. App. 2006) (exemption from the exclusivity provision applies when a worker can show that the employer had a deliberate or specific intent to injure the worker).

Defendant Crown seeks summary judgment primarily on grounds that plaintiff's evidence should be construed as failing to raise a genuine issue of material fact as to whether defendant Crown could have been shown to have had a deliberate or specific intent to injure decedent.  For purposes of this motion, the question presented is whether a reasonable trier of fact could find, based on the evidence produced and making all reasonable inferences that arise from that evidence in favor of plaintiff, that a defendant employer had a specific intent to injure decedent. Despite extensive efforts by defendant Crown to interpret, weigh, compare, and evaluate the evidence presented in a manner that suggests that a factfinder would likely conclude that Crown lacked that degree of intent, such arguments fail to establish that this court should conclude as a matter of law that material issues of fact regarding Crown's intent do not exist and that summary judgment favoring Crown must be entered.

Page 9    OPINION AND ORDER

In *Kilminster*, the Oregon Supreme Court considered allegations that (1) the employer knew that decedent or someone who did the same work as decedent would be injured from a fall from a tower; (2) the employer eschewed taking safety procedures despite knowing that, by so doing, serious injury or death would result; and (3) the employer told decedent to climb the tower at issue or lose his job.  919 P.2d at 482 (emphasis in original omitted).  These allegations were deemed sufficient for a jury to infer that the employer had a specific intent to injure the plaintiff:

> Reading all the allegations together, in the light most favorable to plaintiff, a finder of fact reasonably could infer that [the employer] determined to injure an employee, that is, specifically intended "to produce [decedent's] injury or death." The underlying facts pleaded by plaintiff do not describe when or how [the employer] determined to injure decedent.  However, a specific intent to produce an injury may be inferred from the circumstances.

*Id*. (citation omitted).

As the *Kilminster* court reasoned, "[a] specific intent to injure or kill decedent certainly is not the only state of mind that could be inferred, but it is a permissible inference.  We need not consider whether plaintiff can prove that defendants had the alleged specific intent to injure or kill decedent; in the procedural posture of this case, we consider only the sufficiency of the complaint."  *Id.*

The Oregon Supreme Court reversed a prior dismissal of the plaintiff's "deliberate intention to injure" claim.  Of course, this court is faced not with determining the sufficiency of plaintiff's Complaint, but instead whether defendant Crown is entitled to summary judgment.

The question presented by the summary judgment motion is whether the evidence gathered would permit a jury to find that plaintiff had proved the allegation that defendant Crown acted with the deliberate intention to produce decedent's injuries and death.  *Lusk*, 775

P.2d at 895.  In resolving whether a summary judgment motion should prevail, it is not enough that a jury could find that the employer's acts were "deliberate" – the "more difficult question" is whether the jury could find that the employer specifically intended to produce an injury.  *Id*.

In *Lusk*, the Oregon Court of Appeals recognized that when evaluating a summary judgment motion against a "deliberate intention to injure" claim, a court, like a jury, need not accept an employer's preferred interpretations of the evidence presented "in isolation," but may infer specific intent to injure "from the circumstances."  *Id*. (citation omitted).  In determining that summary judgment was inappropriate under the circumstances, that court anticipated similar reasoning relied upon by the *Kilminster* court in reversing the prior dismissal:

> A specific intent to produce injury is not the only permissible inference to be drawn from defendant's apparent obstinacy, but it is one that a jury should be permitted to consider.  It is for the finder of fact, not the court on summary judgment, to determine what inferences to draw.  Summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. The trial court erred, therefore, in granting defendant's motion for summary judgment.

*Id*. (citations, footnote and internal quotations omitted).

This court concludes that the same is true here.

While this court refrains from engaging in the kind of evaluative scrutiny deployed by defendant Crown regarding this evidence, the substance of it includes testimony, photographic documentation, and written materials that raise factual questions regarding the extent of defendant's knowledge of the flawed performances of the machinery that decedent was working on when she was killed, the history of prior accidents and the likelihood or certainty of death or serious injury resulting from working with this machinery if modifications were not undertaken, the alleged refusals by Crown to reprogram the machinery or render it more safe, the alleged

tolerance of or possible encouragement by Crown of dangerous procedures and practice regarding the maintenance of the machinery in question, Crown's alleged insistence that production lines be understaffed despite concerns expressed by employees, and its decision to remove decedent from a training program and then assign her to work alone on a production line for which she lacked training or experience on the night she was killed.

Defendant Crown presents careful, detailed refutations of and challenges to this evidence, and asserts repeatedly that there are no conclusive grounds that would support a determination that decedent's supervisors (which included her father) and defendant Crown itself wished her harm. Such arguments need not be analyzed and resolved for purposes of determining that issues of fact preclude granting this summary judgment motion.

This court need not determine at this point whether plaintiff has established that defendant Crown had the specific intent to injure decedent. Instead, after examining the evidence presented in a light most favorable to plaintiff, the court concludes merely that questions of fact exist as to that issue, and that a reasonable finder of fact could infer a specific intent to produce an injury from these circumstances. After examining the evidence gathered in this matter, this court concludes that the existence of those questions of fact preclude granting defendant Crown's summary judgment motion. That motion is denied because decedent's employer, under the circumstances and evidence presented, could be viewed by a factfinder as being potentially liable under O.R.S. 656.156(2) for intentionally injuring the decedent. *See Gulden v. Crown Zeller-Bach Corp.*, 890 F.2d 195 (1988); *Kilminister*, 919 P.2d 474 (Or. 1996); *Lusk*, 775 P.2d at 895.

Page 12     OPINION AND ORDER

Defendant Crown also proffers a weaker, alternative ground for summary judgment, contending that only a spouse, child, or dependent of a decedent has standing to maintain a claim under O.R.S. 656.156(2). This theory, that the statute gives a right to bring an action explicitly to only the worker, widower, child, or dependent of the worker, and not a personal representative, was addressed and rejected by the *Kilminster* court:

> Logically, the only party who can pursue . . . and thereby effectuate the substantive right afforded [to a] deceased worker by ORS 656.156(2) . . . is the worker's personal representative.

*Kilminster*, 919 P.2d at 480.

To the extent that defendant Crown has attempted to distinguish its arguments from the positions asserted by the employer in *Kilminster*, Crown's arguments are rejected.

### ii.    Defendant Ameco's Motion

Plaintiff also asserts a wrongful death negligence claim and a strict product liability claim against defendant Ameco, alleging that Ameco was negligent in its installation of the "Blank Accumulation and Robotic Transfer system" (referred to as the BART I machine) performed for defendant Crown in 1990. Decedent was killed while working on the BART I. Plaintiff alleges that defendant Ameco failed to install the machine in a way that would prevent obstruction of the access door, failed to provide a method of keeping the access door from unintentionally closing or the machine from restarting automatically and unintentionally, and failed to provide adequate warnings and training regarding this machine and these flaws. Pl.'s Second Amended Compl. at 8-9.

Defendant Ameco moves for summary judgment primarily on grounds that plaintiff's action against Ameco is barred by the applicable statute of repose, O.R.S. 30.905, and

alternatively as to the Ameco Corporation because the claims arose after the statutory period for bringing claims against a dissolved corporation had expired.

Plaintiff fails to assert any meaningful objections as to defendant Ameco's other arguments seeking summary judgment on plaintiff's claim for strict products liability. The court has evaluated those arguments, plaintiff's strict liability claim, and the evidence presented. The court concludes that defendant Ameco is entitled to summary judgment as to plaintiff's products liability claim. Alternatively, plaintiff is construed to have waived this claim, as well.

Similarly, plaintiff fails to resist defendant Ameco's summary judgment motion as to plaintiff's negligence claim except as to the allegations that Ameco failed to modify the BART I to prevent it from restarting automatically, and failed to post notices of the machine's dangers or to adequately train and warn about the machine's flaws. Accordingly, defendant Ameco is entitled to summary judgment as to the other alleged grounds asserted for plaintiff's negligence claim against it, both on the merits presented by Ameco and because plaintiff has waived those grounds.

What is left as to plaintiff's claim against Ameco are the Second Amended Complaint's specific allegations that Ameco was negligent:

> (c)    By failing or refusing to modify the BART I machine to prevent it from restarting automatically, even when the access door closes;

> (e)    By failing or refusing to provide posted notice of the dangers posed by the inadvertent closure of the access doors, and automatic restart of the BART I machine; and

> (f)    By failing or refusing to adequately train and warn of the problems with the BART I access door and automatic restart.

Second Am. Compl. at 9.

Page 14    OPINION AND ORDER

Defendant Ameco contends correctly that none of these allegations concerns post-sale negligence, but instead refer to defects or negligence that existed, if at all, at the date of sale to co-defendant Crown.  That sale occurred in 1990.  Decedent was killed in 2002.  Accordingly, the applicable statute of repose applies.  That statute provides:

(1) . . . a product liability civil action may not be brought for any death, personal injury or property damage that is caused by a product and that occurs more than eight years after the date on which the product was first purchased for use or consumption.

(2) Except as provided in ORS 30.907 and 30.908 (1) to (4), a product liability civil action for personal injury or property damage must be commenced not later than the earlier of:

(a) Two years after the date on which the plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the product, or the causal relationship between the injury or damage and the conduct of the defendant; or

(b) Ten years after the date on which the product was first purchased for use or consumption.

(3) Except as provided in ORS 30.907 and 30.908 (1) to (4), a product liability civil action for death must be commenced not later than the earlier of:

(a) The limitation provided by ORS 30.020; or

(b) Ten years after the date on which the product was first purchased for use or consumption.

O.R.S. § 30.905.

Plaintiff contends that the allegations against the Ameco defendants should be construed as pertaining to the "post-sale" conduct of those defendants.  Plaintiff relies upon two decisions in hopes of proceeding with claims against Ameco despite these claims being brought beyond

the repose period:  *Erickson Air-Crane Co. v. United Tech. Corp.*, 735 P.2d 614 (Or. 1987) and

*Simonsen v. Ford Motor Company*, 102 P.3d 710 (Or. App. 2004).

The facts in *Erickson* included allegations that the defendant made a negligent

misrepresentation of the product's useful safe life, which took place after the time a helicopter at

issue was first sold.  *Erickson*, 735 P.2d at 616-18.  Here, plaintiff presents no evidence of any

misrepresentations on the part of defendant Ameco, distinguishing this case from *Erickson*.  In

*Erickson*, the defendant made a misrepresentation about the safety feature of the helicopter long

after the initial sale, which when relied upon, led to the plaintiff's injury.  The alleged flaw

inherent in the BART 1 is that the machine automatically restarts when the guard door closes,

and there is no evidence that Ameco ever misrepresented this "feature."

In *Simonson*, a driver was injured in a automobile accident and sued the manufacturer.

The driver's negligence claim survived a statute of repose challenge because the claim was based

on an alleged failure to test for a latent defect upon receiving reports of serious injuries and

fatalities.  This raised issues of fact as to when the claim accrued.  For purposes of resolving a

motion to dismiss, the court accepted the plaintiff's allegation as true, and allowed the plaintiff to

proceed on the theory that reports of injuries arising after the automobile  had been placed in

service should have led to testing and discovery of a defect.  *Simonsen*, 102 P.3d at 717-19.

While there is evidence of injuries arising from use of the BART I, that evidence has not been

shown to have led to the discovery of a defect that should deprive defendant Ameco of the

otherwise applicable statute of repose.  Plaintiff's allegations, and the supporting evidence

gathered, confirm that the conditions that form the basis for plaintiff's remaining claim against

Ameco are undeniably conditions that existed at the time of Ameco's initial sale and installation

of the product in 1990.  Accordingly, for the reasons stated, the Ameco defendants are entitled to summary judgment as to plaintiff's claims against them.

## **CONCLUSION**

The parties' arguments, briefing and supporting documentation have been considered carefully.  For the reasons provided herein, defendant Crown's motions to strike [76, 78, 80, 85] are denied; defendant Crown's Motion for Summary Judgment [49] is denied; and defendant Ameco's Motion for Summary Judgment [29] is granted.

IT IS SO ORDERED.

DATED this   30   day of March, 2007.


                                              /s/ Ancer L. Haggerty
                                            Ancer L. Haggerty
                                      United States District Judge